UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED ACTION

CASE NO. 20-60851-CIV-SINGHAL
CASE NO. 20-22207-CIV-SINGHAL
CASE NO. 20-22316-CIV-SINGHAL
CASE NO. 20-22594-CIV-SINGHAL

IN RE: UNIVERSITY OF MIAMI COVID-19
TUITION AND FEE REFUND LITIGATION
_____/

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment. (DE [130]). Defendant filed its Motion for Summary Judgment shortly after Plaintiffs filed their Motion for Class Certification. After reviewing both the Motion for Summary Judgment and the Motion for Class Certification, the Court has determined that judicial efficiency and economy are best served by first ruling on the Motion for Summary Judgment. That Motion is fully briefed. For the reasons discussed below, Defendant's Motion for Summary Judgment is granted.

I.    INTRODUCTION

Plaintiffs' claims arise from a situation that never occurred before: in response to a pandemic, public health measures forced the temporary closure of institutions, including institutions of higher learning,[1] but technology allowed schools and universities to continue to educate their students through online/remote/distance learning environments.

---

[1] Public health measures during the 1918 influenza pandemic included banning mass gatherings and closing schools. *See* Bootsma, Martin CJ, and Neil M. Ferguson. "The effect of public health measures on the 1918 influenza pandemic in US cities." *Proceedings of the National Academy of Sciences* 104.18 (2007): 7588-7593. Online learning did not exist then.

Plaintiffs filed suit because they expected to attend classes at the University of Miami (hereinafter, "the University" or "UM") in person but, due to the pandemic public health requirements, attended classes online from March 25, 2020, to the end of the semester. Plaintiffs claim that UM should have refunded a portion of their tuition and/or fees because the students lost the benefit of their bargain when UM transitioned from in-person classes to virtual. Plaintiffs allege breach of contract, breach of implied contract, and unjust enrichment (DE [49]) on behalf of themselves and the putative classes.

II.    LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[2] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the

---

[2] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

2

material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

III.   DISCUSSION

UM moves for summary judgment on several grounds: (1) Plaintiffs' claims are essentially claims for educational malpractice, which is not a recognized cause of action; (2) Plaintiffs have failed to produce evidence of an express or implied contract to provide in-person classes or an on-campus experience; (3) the University Student Handbook contains express reservations of the right to alter or amend its procedures and policies and the right to "at any time deny, revoke, or modify authorization to use an University facility or premises;" (4) Plaintiffs' claims are barred by the doctrine of impossibility due to the governmental public health orders requiring the University to close its facilities; (5) Plaintiffs acquiesced in the transition to online education; and (6) Plaintiffs' unjust enrichment claim fails because there is no evidence that UM was unjustly enriched and

3

the Financial Responsibility Statement is an express contract that precludes a claim for unjust enrichment.

The Court notes that several evidentiary issues remain pending. UM has moved to strike several webpages submitted by Plaintiffs in opposition to the Motion for Summary Judgment on the grounds that they are not properly authenticated and are hearsay. (DE [153]) UM also filed a *Daubert* motion to exclude the testimony of Plaintiffs' damages expert, Charles D. Cowan, Ph.D, which remains pending. *See* (DE [148]). Furthermore, UM argues Plaintiffs cannot rely on Cowan's expert report (DE [148]) in opposition to the Motion for Summary Judgment because the report is unsworn and not supported by an affidavit as required by Fed. R. Civ. P. 56(e). These issues need not, however, be resolved at this time because neither the webpages nor Dr. Cowan's report alter the Court's conclusion that summary judgment is appropriate.

A.    Factual Background

Plaintiffs were enrolled as undergraduate students at UM during the Spring 2020 semester. (DE [131] ¶¶ 1). In March 2020, state and local officials in Florida declared a public health emergency due to the spread of the COVID-19 virus. (*Id.* ¶¶ 15-21). Both the state of Florida and the local government issued emergency orders mandating closure of universities for all purposes except for facilitating virtual learning and providing living quarters for students who could not return home. (*Id.* ¶¶ 21-24). Beginning March 25, 2020, UM implemented partial closure of its campus housing and transitioned classes to virtual classrooms for the remainder of the semester. (*Id.* ¶¶ 25-26).

Plaintiffs continued their coursework online and accepted UM's offer to switch their classes to a pass/fail (credit/no credit) basis. (*Id.* ¶ 29). Plaintiffs received credit for the

classes they took that semester. (*Id* ¶ 29-31). Neither Plaintiff could state in deposition that their degrees are worth less because part of the semester was taught remotely. (*Id.* ¶ 30). Plaintiffs contend, however, in their Statement of Facts (DE [140]) that "they received a less valuable education than they paid for Spring 2020 semester when Defendant transitioned online." (*Id.* ¶ 77).

UM did not offer a rebate of tuition after it transitioned to remote learning, but it did provide prorated refunds for the fees and services that could not be provided in an online or virtual format. (*Id.* ¶ 32). These refunds included fees for housing, dining, parking, student center, wellness center, health and counseling, student activities, and athletic fees. (*Id.*). The amount of the refund was based on the number of days that were left in the Spring 2020 semester when the University was forced to transition its classes online by government order, from March 25 to May 6, 2022. (DE [150] ¶ 66; DE [140] ¶ 78).

B.  <u>Legal Analysis</u>

Plaintiffs filed suit to recover a portion of the tuition and various fees they paid for the Spring 2020 semester. Plaintiffs' Amended Complaint alleges breach of express and implied contract and unjust enrichment on behalf of students who paid tuition for the Spring 2020 semester (Counts I, II, and III) and breach of express and implied contract, breach of implied covenant, and unjust enrichment on behalf of students who paid mandatory fees for the Spring 2020 semester (Counts IV, V, and VI). Plaintiffs also allege breach of contract and unjust enrichment on behalf of themselves seeking a pro rata refund of fees for housing and meal plans (Counts VII and VIII).

    1.  <u>Tuition Claims</u>

  Plaintiffs allege UM breached an express or implied contract to provide only in-person classes and a full on-campus experience when the University transitioned to online learning for the second half of the Spring 2020 semester. UM argues that there is no genuine dispute of fact that would support a finding that such a contract existed. The Court agrees with UM.

  To state a claim for breach of contract under Florida law, a party must "establish: (1) the existence of a contract; (2) a material breach of that contract; (3) and damages resulting from the breach." *Villard v. Capella Univ.,* 2017 WL 9253388, at *2 (M.D. Fla. Dec. 21, 2017), *report and recommendation adopted,* 2018 WL 2011433 (Apr. 30, 2018) (citing *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009). "In Florida, whether a contract is implied in fact is 'inferred from the facts and circumstances of the case.'" *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1326 (11th Cir. 2012) (quoting *Eskra v. Provident Life & Accident Ins. Co.*, 125 F.3d 1406, 1413 (11th Cir.1997)). For a contract to exist, "there must be reciprocal assent to certain and definite propositions." *Acosta v. Dist. Bd. of Trs. of Miami-Dade Comm. Coll.,* 905 SO. 2d 266, 228 (Fla. 3d DCA 2005).

  Florida law recognizes "that colleges and universities have a legal relationship with their students that is contractual in nature." *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.,* 524 F. Supp. 3d 1346, 1351 (S.D. Fla. 2021). Terms of the contractual relationship "may be derived from university publications such as the student handbook and catalog." *Sirpal v. Univ. of Miami,* 509 Fed. Appx. 924, 929 (11th Cir. 2013) (citing *Jallali v. Nova Se. Univ., Inc.,* 992 So. 2d 338, 342 (Fla. 4th DCA 2008)). But "a party can only advance a claim of breach of contract by identifying and presenting the actual terms

6

of the contract allegedly breached." *Herssein Law Grp. v. Reed Elsevier,* 594 Fed. Appx. 606, 608 (11th Cir. 2015).

Plaintiffs contend that UM promised in-person education through the University's website, recruitment brochures, and circulars, which promote the campus "vibe" and facilities and experiences.[3] (DE [139]). The campus is described as "one of South Florida's prime destinations for a rich variety of arts and culture offerings." (*Id.,* Ex. 7). The campus features art museums, theatres, recital halls, festivals, movies, and athletics. (*Id.*). The website promotes the campus:

> Set one foot on campus and you'll feel it – a vibe that <u>celebrates life, learning, and daily activities</u> that are anything but routine. Capitalizing on its glorious weather, national reputation, and location at the crossroads of the Americas, the University of Miami offers students unparalleled academic support, enrichment activities galore, sports and cultural offerings, wellness and fitness programs, and endless opportunities to explore, engage, and better the community and the world. Visit the <u>Division of Student Affairs</u> page.

(*Id.* Ex. 8). But descriptions of the campus and its facilities do not support Plaintiffs' claim for breach of contract to provide only in-person classes. *See De Leon v. New York Univ.,* 2022 WL 179812, at * 9 (S.D.N.Y Jan. 20, 2022) (references to university's location and facilities do not support claim for breach of contract to provide in-person instruction because plaintiff did not allege the university's physical location changed).

Plaintiffs argue that UM has a separate website dedicated to an online-only program known as "UOnline" which uses distinct marketing and information that is different from that provided to traditional students. (DE [140] ¶ 37). But different marketing

---

[3] UM objects to the materials submitted by Plaintiffs in support of their claims as being unauthenticated and hearsay. The Court recognizes the problems with Plaintiffs' submissions but nevertheless will accept them for purposes of this motion.

7

materials do not create a promise or agreement for in-person learning under all circumstances.

Plaintiffs have introduced the 2019-2020 Academic Bulletin which lists the approximately 3000 courses available at the university. (DE [139], Ex. 19). Of those 3000 courses, *three* refer to on-campus activities:

```
BIL 622. Plant Identification in an Evolutionary Context. 3 Credit Hours.
An exploration of the plants in the on-campus Gifford Arboretum as well
as other plants that students interact with in their daily environment
(foods, beauty products, fibers, medicines, poisons, etc.)

BUS 801. Introduction to Commercial Real Estate: Analysis and Field
Experience.
3 Credit Hours.
Students enrolled in the Accelerated MBA in Real Estate program are
required to participate in a one-week, four module, on-campus class
followed by a full-time internship at a local Commercial Real Estate
Institution during the first summer of the program. Module I: Students are
introduced to the complexities of commercial construction techniques
used in South Florida and the important links between architectural
plans and economic value to owners and tenants. Module II: Students
are introduced to the terminology and financial analysis of commercial
real estate. Module III: Students are introduced to the application of
real estate finance and valuation principles using ARGUS Valuation –
DCF. Module IV: Students participate in a required internship at a local
Commercial Real Estate Institution. Regarded as a full-time student.

MMI 460. Recital Recording and Sound Reinforcement (Recording
Services). 1 Credit Hour.
Practical experience in live concert recording, editing and mastering,
and sound reinforcement, under supervision of professional on-campus
engineers.
Requisite: Frost School of Music.
```

There is no certain or definite promise by UM in the Academic Bulletin to provide in-person classes and none can be implied. Likewise, Plaintiffs' reference to the Student Handbook does not shed light on any express or implied promise to provide only in-person learning. In her deposition, Plaintiff Dimitryuk cited the Handbook's Statement on Student Rights (DE [131] Ex. 1, p. 201 and DE [140] ¶ 14) and listed rights that she claims established a contractual right to in-person classes:

- The right to live and/or attend classes in a physically safe environment
- The right to learn without disruption
- The expectation of a positive living/learning environment
- Access to academic and support services that enhance student learning
- The right to pursue academic interests

8

- Equal access to available research and appropriate resources
- The right to assemble
- The right to associate with student organizations of one's own choosing
- The right to participate in a system of shared governance
- The right to engage in service opportunities that enhance learning outcomes, both on and off campus
- The right to be informed of and share opinions on, matters affecting the university community
- The right to know academic requirements and to be evaluated fairly.

Nothing in this list of identified rights states or implies that classes would only proceed in-person. Indeed, given the COVID-19 emergency in March 2020 and the government health restrictions in effect at the time, it can be argued that the "right to live and/or attend class in a physically safe environment" would have *required* online, not in-person, classes.

The Court has carefully reviewed the materials submitted by Plaintiffs in support of their claim that they had a contractual agreement with UM for in-person instruction. But the evidence does not support their claims. Plaintiffs have the burden of producing more than a "scintilla" of evidence in opposition to Defendant's Motion and they have not met it. In granting summary judgment in favor of the University of Pacific on a similar breach of contract claim, a district court in California aptly summarized the scenario in this case, as well:

> While this Court concluded at the motion to dismiss stage that Plaintiff had sufficiently alleged facts that *could* show a specific promise by Defendant to hold in-person instruction and services, at the summary judgment phase Plaintiff must provide evidence supporting his assertion that Defendant made express promises. Statements in the course catalog about the "days and times" and the "location" of courses are not express promises to provide in-person instruction… Although UOP's promotional materials and course catalogs certainly created an expectation that classes would be taught in-person and that students would be able to take advantage of a myriad of on-campus opportunities, these materials do not contain any specific or identifiable promise that is adequate

9

> to support a breach of contract, even one implied in fact… Rather, the materials and publications merely describe UOP's on-campus experience, which Plaintiff received until Defendant was required to respond to and comply with California state mandates as a result of the COVID-19 pandemic.

*Randall v. Univ. of the Pac.,* 2022 WL 1720085, at *6 (N.D. Cal. May 28, 2022). Likewise, in this case, Plaintiffs have not met their burden of sustaining their claims for breach of express or implied contract for in-person learning.

And even if such a contract did exist, UM had the express right to alter or amend its procedures or policies *and* to close its classrooms and facilities. The Student Handbook expressly states the following:

> From time to time it may be advisable for the University to alter or amend its procedures or policies. Reasonable notice may be furnished to the University community of any substantive changes, but is not required.
>
> \*\*\*
>
> **A.9 Restriction/Revocation of Facilities Use**
>
> The University of Miami reserves the right at any time to deny, revoke, or modify authorization to use any University facility or premises. Decisions to authorize use of University facilities are made by the appropriate facility coordinator. Decisions to deny, revoke, or modify the authorization to use University facilities, because of potential danger, are made by the President of the University upon recommendation by the Vice President and/or the appropriate administrator involved with use of such University facilities. When possible, such decisions will be made only after review of a written recommendation by the appropriate facility coordinator. Decisions made in accordance with the policy are final and may not be appealed.

(DE [131] Ex. 1, pp. 200, 218). UM had the express right (and responsibility) to close its facilities in the face of COVID-19 and the resulting public emergency orders. *See Aubrey v. New School,* 2022 WL 3867832, at *13 (S.D.N.Y Aug. 30, 2022) (disclaimer in student handbook absolved liability for breach of an alleged contract to provide in-person instruction); *Michel v. Yale Univ.*, 547 F. Supp. 3d 179, 190 (D. Conn 2021) (same); *Crista v. Drew Univ.*, 534 F. Supp. 3d 363, 378 (D.N.J. 2021) (same); *Smith v. Univ. of Penn.,*

534 F. Supp. 3d 463, 474 (E.D. Pa. 2021) (same); *Chong v. Northeastern Univ.,* 2021 WL 1857341, at *5 (D. Mass. May 10, 2021) (same). UM cannot be held liable for breach of contract by exercising its rights under the alleged contract.

For these reasons, UM is entitled to summary judgment on Counts I and II of the Amended Complaint.

### 2. Fees Claims

Plaintiffs seek to recover a pro rata refund of fees paid for student facilities and services that were unavailable while the University was in remote-learning mode. These claims are made on behalf of themselves and the putative class (Counts IV, V, and VI) and individually (Counts VII and VIII).[4] UM is entitled to summary judgment because the undisputed facts establish that UM made a *pro rata* refund of the fees. (DE [150] ¶ 66 and DE [140] ¶ 78).

The refund of fees was for the 42 days remaining in the 115-day semester after the government mandated that the University shut down. (*Id.*). Plaintiffs argue the *pro rata* amount should have been 48% instead of 36.5%, but neither the Plaintiffs nor their expert provide factual support for that percentage. A conclusory statement unsupported by underlying facts upon which the inference is based is insufficient to defeat summary judgment. *Christy v. Custom Services, LLC,* 2020 WL 5514185, at *2 (S.D. Fla. Aug. 5, 2020).

---

[4] Counts VII and VIII seek *pro rata* refunds of the housing and meal fees for Spring 2020 on behalf of the two Plaintiffs. Only Plaintiff Dixon lived on campus that semester, and she acknowledged in her deposition that she received a refund. (DE [131] ¶ 34).

There being no genuine dispute that UM refunded a *pro rata* portion of the fees paid for the Spring 2020 semester, UM is entitled to summary judgment on Counts IV, V, VI, VII and VIII of the Amended Complaint.

### 3. Unjust Enrichment

Finally, Plaintiffs seek to recover a portion of the tuition paid under the theory of unjust enrichment. "To establish unjust enrichment in Florida, a plaintiff must prove that '(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.'" *Innovative Vehicle Sols. W., LLC v. Renntech, Inc.,* 2022 WL 3137029, at *6 (S.D. Fla. June 16, 2022), *report and recommendation adopted,* 2022 WL 3009495 (S.D. Fla. July 29, 2022) (quoting *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018)).

The parties do not dispute that Plaintiffs conferred a benefit on UM by paying tuition and that UM accepted and retained the tuition payments. Thus, the first two elements of an unjust enrichment claim are met. The remaining issue is whether it would be, under the circumstances, inequitable for UM to retain the full amount of tuition paid. Unjust enrichment is available "'to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity.'" *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (quoting *Henry M. Butler, Inc. v. Trizec Props., Inc.,* 524 So.2d 710, 711 (Fla. 2d DCA 1988)).

Given the totality of the circumstances, Plaintiffs have not established that payment of full tuition for the Spring 2020 semester violates good conscience and fundamental principles of justice or equity. Plaintiffs were, first and foremost, students pursuing a degree which required them to earn a certain number of credit hours. They paid tuition for the privilege of taking classes at UM. (DE [131] ¶ 6). By attending classes online after March 25, 2020, Plaintiffs were able to complete their courses and earn the necessary credits toward graduation. UM provided Plaintiffs what they paid for: the right to earn college credits at the University.

Because unjust enrichment is an equitable remedy, the entirety of the circumstances must be considered. In the Fall 2020 semester, UM offered students the option of attending classes online or in-person. Plaintiff Dixon opted to attend classes online because she did not want to be exposed to COVID. (*Id.* ¶ 12). Plaintiff Dimitryuk opted to take a class online in Summer 2020 to finish her degree faster. (*Id.* ¶ 13). Plaintiffs have not shown that they paid less for the classes taken online in the Fall and Summer semesters than they paid in Spring 2020. They do not complain that the UM was unjustly enriched by their payment of tuition for these online courses.

To the extent Plaintiffs argue that their education in Spring 2020 was less valuable than they paid for (*see* DE [140] ¶ 77), Plaintiffs' unjust enrichment claims *are* barred by the doctrine of educational malpractice. "[I]n order to adjudicated Plaintiff[s'] tuition based-claim for unjust enrichment, this [C]ourt would have to examine and evaluate the *quality* of the education that was provided to Plaintiff[s]." *De Leon,* 2022 WL 179812, at *13 (dismissing claim for unjust enrichment). This is precisely what Florida's educational malpractice doctrine prohibits. *See Tubell v. Dade Cty. Pub. Sch.,* 419 So. 2d 388, 389

(Fla. 3d DCA 1982); *Dep't of Heath & Rehab. Servs. v. B.J.M.,* 656 So. 2d 906, 915 (Fla. 1995). For these reasons, UM is entitled to summary judgment on Count III of the Amended Complaint.

IV. <u>CONCLUSION</u>

In conclusion, Plaintiffs have failed to establish a genuine dispute of material fact that would defeat UM's Motion for Summary Judgment. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE [121]) is **GRANTED.** Pursuant to Fed. R. Civ. P. 58(a), a Final Judgment will be entered in favor the University of Miami in each of the consolidated actions. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 30th day of December 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF